Booth, Judge,
delivered the opinion of the court:
Defendant demurs to plaintiff’s petition. Heretofore a rule had issued from the court requiring plaintiff to make the petition more definite and certain. Therefore the petition now under review is plaintiff’s amended one. Defendant still insists upon its demurrer. The material allegations of the petition disclose the plaintiff as copatentee with one John T. Bassell of devices known as gun sights, adaptable for use on any caliber or model of cannon, machine gun, or-firearm. Two patents for the device were issued to the pat-entees, one No. 870381, dated November 5, 1907, the other No. 919525, dated April 27, 1909. On January 16, 1911, the patentees entered into a written contract with the War Department, licensing the latter to manufacture, cause to be manufactured, use, or sell the patents for and during the *19 term of the patent rights. The consideration for this contract was the payment of $5,000 in cash and royalties at the rate of 15 cents for each gun sight coming within the contract. The $5,000 was duly paid. On September 5, 1917, the patents having been duly assigned by Bassell to the plaintiff on February 14, 1917, the plaintiff in his own right filed a claim with the War Department for royalties under the contract, asserting an infringement of the patents by certain manufacturers. The War Department allowed the claim to the extent of 85,169 gun sights. The auditor for the department disallowed the settlement, but the Comptroller General, on February 8, 1922, overruled the audftor, and the plaintiff finally received and accepted $12,959.95 in payment thereof." On January 11, 1923, the year following the disposition of the above claim, the plaintiff alleged that he for the first time became aware of a letter, dated April 12, 1917, written by the Chief of Ordnance, and addressed to the Colts Patent Fire Arms Manufacturing Company. Paragraph 4 of the letter is relied upon to sustain this claim, and we quote -it in full:
‘* 4. As previously decided, the rear sight must be of the type as now shown on the Benet-Mercier machine rifle, differing in details as given on the prints which have already been supplied you. The rear cover was redesigned to eliminate the top rib in accordance with your suggestion, and prints have been forwarded to the commanding officer Springfield Armory; it is presumed that these have since been received at your establishment.”
Plaintiff’s suit is predicated upon the above paragraph of the letter, and the allegation is made that the rear sights on the Benet-Mercier machine rifle referred to in the letter infringe plaintiff’s patents, and that he has not been compensated for their use. Aside from this specific charge is a general and decidedly indefinite allegation that between June 30, 1911, and the filing of the petition the plaintiff is advised and "verily believes” that his patents have been infringed by numerous other manufacturers of firearms, which he names, in manufacturing ordnance under contracts for the Government. Plaintiff sought a reopening of his claim before the Comptroller General and was refused. He pro *20 ceeded again before the War Department for additional compensation without avail. He finally asked the War Department to assemble the pertinent data relative to his contention, including the letter of April 12, 1917, and submit the same to the Comptroller General for decision. On December 18,1925, the Comptroller General decided adversely tó plaintiff’s contention, and hence this suit. The petition concludes with a prayer for judgment based upon an alleged failure to pay for 114,641 gun sights, at the rate of 70 cents per sight, less the sum of $12,595.95, heretofore paid, i. e., $67,652.75. The contention for increased royalties over the amount fixed in the license contract is claimed under the act-of March 2, 1919, 40 Stat. 1272-1278, commonly known as the Dent Act. It is unnecessary to discuss this argument. Obviously the case can by no possibility-become a Dent Act case. United States Bedding Co. v. United States, 55 C. Cls. 459.
If we correctly apprehend plaintiff’s allegations, he now seeks recovery, irrespective of the license contract, upon the theory that he is entitled to just compensation for the gun < sights manufactured by or for the Government until the expiration of his patent rights. Clearly the contention is untenable; at any rate the plaintiff has filed no brief to sustain it and contented himself with a mere statement of facts in oral argument. Whatever claim the plaintiff may have grows out of the license agreement; and aside from the various arguments advanced by the defendant to sustain the demurrer it is apparent from the face of the petition that, the court is.without adequate information to allow the case to' go to proof. Plaintiff’s allegations abound in conjecture and inference, no positive statement of fact material to the issue discloses a liability or sets forth a cause of action. One paragraph of a letter passing between an official of a department and a Government contractor with reference to the manufacture of rifles is wholly insufficient to sustain the manufacture of the rifles mentioned, and in nowise discloses the detail of construction or what was or what was not used. - The court would not be warranted in assuming the existence of facts which the plaintiff himself is unable to state with positiveness or certainty. We are not advised as to plain *21 tiff’s patent beyond the general term “ gun sights.” No letters patent are attached to the petition and nothing appears of record except a vague and indefinite allegation that possibly upon proof the allegations may be sustained. Plaintiff admits and alleges that he has “ no information or knowledge upon which to base an allegation ” as to Govern-, ment orders or contracts for the manufacture of ordnance involving the use of his patents.
What, as a matter of fact, the petition seeks is the right of discovery. This we have no power to grant. While this is not a patent case in the usual acceptation of the term, it involves the issue of infringement, and would unquestionably require a volume of proof to sustain or discredit it in the absence of more precise statements of fact and absolute knowledge of the existence of things pertinent to the issue. We believe the demurrer should be sustained and the petition dismissed. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.